UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| NORA SUE DOVE, | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| vs. | )   CAUSE NO. 1:03-CV-379 RM |
| | ) |
| DEPUY ORTHOPEDICS, | ) |
| | ) |
| Defendant | ) |

OPINION AND ORDER

This matter comes before the court on three motions filed by Depuy Orthopedics: a motion to file an oversized brief, a motion for summary judgment, and a motion to strike portions of C. Edd Campbell's affidavit. For the following reasons, the court grants the motion to file an oversized brief, grants in part and denies in part the motion for summary judgment, and denies the motion to strike as moot.

FACTS

The following facts are taken from the record and are viewed in the light most favorable to plaintiff Nora Dove as is reasonable.[1] Depuy Orthopedics, Inc. sells artificial joints used in joint replacement surgery. Depuy conducts performance evaluations on its employees at least once each year.  DePuy uses a

---

[1] In light of Ms. Dove's express abandonment of several of her claims against DePuy in her response to the summary judgment motion, the court only recites the facts needed to resolve the remaining Equal Pay Act and Title VII claims.

standard job performance evaluation form and the same criteria to rate all of the manufacturing supervisors' performance. On DePuy's rating scale, performance ratings fall between 9 (outstanding) and 1 (unsatisfactory), with a competent rating falling between 6 and 4. These job performance ratings consist of goals and actual performance in different categories, including comments and a numerical score. The performance evaluations are used as tools to determine both salaries and bonuses for the upcoming year.[2]

Depuy hired Ms. Dove as a manufacturing supervisor in December 2000. Depuy preferred to hire Ms. Dove to fill the supervisor vacancy because of its desire for diversity, and Ms. Dove is currently the only female manufacturing supervisor. Ms. Dove had previous manufacturing supervisor experience and a college degree.

Depuy has one job position description for manufacturing supervisors, which states all of the skills, experience, and education required for the job, as well as the principal duties. These duties do not vary significantly between different manufacturing supervisors and are performed under similar conditions, albeit on different shifts or departments. Ms. Dove also had a great deal of responsibility on the Ergonomics Committee.

Another manufacturing supervisor, Brent Benzinger, began working for DePuy in 1998. From December 2000 to April 2003 Ms. Dove and Mr. Benzinger

---

[2] DePuy also conducts mid-year reviews, which are used solely for coaching purposes and do not affect compensation.

held the same position, and Ms. Dove alleges that higher wages were paid to Mr. Brent Benzinger — $110.00 in 2001, $1,831.84 in 2002, and $4,180.80 in 2003 — for equal work performed under similar work conditions in violation of the Equal Pay Act and Title VII of the Civil Rights Act of 1964. DePuy denies it has violated either of these statutes.

STANDARDS OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). "No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party." Ritchie v. Glidden Co., 242 F.3d 713, 720 (7th Cir. 2001). "The mere existence of an alleged factual dispute will not defeat a summary judgment motion; instead, the non-movant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The party with the burden of proof on an issue must show that there is enough evidence to support a jury verdict in his favor. Lawrence v. Kenosha County, 391

F.3d 837, 841-842 (7th Cir. 2004); *see also* <u>Johnson v. Cambridge Indus., Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003) ("summary judgment 'is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events'") (quoting <u>Schacht v. Wisconsin Dep't of Corr.</u>, 175 F.3d 497, 504 (7th Cir. 1999)).

ANALYSIS

In response to DePuy's motion for summary judgment, Ms. Dove expressly abandoned several claims. Consequently, the court grants DePuy's motion as it relates to her Title VII retaliation claim, American with Disabilities Act claim, Fair Labor Standards Act claim, and all claims arising under Indiana law. FED. R. CIV. P. 56(e); *see also* <u>Ortiz v. John O. Butler Co.</u>, 94 F.3d 1121, 1124 (7th Cir. 1996) ("If the nonmoving party fails to establish the existence of an element essential to his case ... summary judgment must be granted to the moving party."). This leaves only two claims for the court to consider, Ms. Dove's Equal Pay Act (EPA) claim and Title VII wage discrimination claim.[3]

---

[3] DePuy presents arguments against "several miscellaneous claims of sex discrimination" in its reply. Ms. Dove affirmatively abandoned all other claims in her response to the summary judgment other than her EPA pay disparity and Title VII wage discrimination claims, so the court will not address these arguments.

EQUAL PAY ACT

To establish a prima facie case of wage discrimination under the EPA, Ms. Dove must show that "(1) higher wages were paid to a male employee, (2) for equal work requiring substantially similar skill, effort and responsibilities, and (3) the work was performed under similar working conditions." Cullen v. Indiana Univ. Board of Trustees, 338 F.3d 693, 698 (7th Cir. 2003) (quoting Stopka v. Alliance of Am. Insurers, 141 F.3d 681, 685 (7th Cir. 1998)). If Ms. Dove can establish a prima facie case, the burden of persuasion shifts to DePuy to prove that such wages where paid "pursuant to (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) a differential based on any other factor other than sex." 29 U.S.C. § 206(d)(1).

For the purposes of this motion, it is uncontested that Ms. Dove has shown that higher wages were paid to Mr. Brent Benzinger—$110.00 in 2001, $1,831.84 in 2002, and $4,180.80 in 2003—for equal work performed under similar work conditions. DePuy argues the proper comparative pool includes all male manufacturing supervisors and not just Mr. Benzinger, and says that when Ms. Dove is compared to the total pool of male manufacturing supervisors, her pay increases were equal. Ms. Dove disputes DePuy's "comparative pool" theory and simply asserts that, as the plaintiff, she can choose the comparator of her choosing, in this case Mr. Benzinger.

As the parties have not cited any controlling case law directly addressing this issue, the court begins by looking at the statute. The plain language of the Equal Pay Act does not explicitly preclude the individual comparison between one

6

male and one female employee, and in fact, a reasonable reading seems to allow it.[4] By prohibiting employers from discriminating "between employees on the basis of sex by paying wages to employees ... at a rate less than the rate at which he pays wages to employees of the opposite sex," the statute contemplates a one-on-one employee comparison. This reasonable reading draws indirect support from appellate cases comparing a female plaintiff to a single male employee. *See* Cullen v. Indiana Univ. Board of Trustees, 338 F.3d at 698-700; *see also* Dey v. Colt Constr. & Dev. Co., 28 F.3d 1446, 1461 (7th Cir. 1994). Thus, the court agrees with Ms. Dove and analyzes her EPA claim using Mr. Benzinger as the comparator.

Because Ms. Dove makes a *prima facie* case under the EPA when compared to Mr. Benzinger from December 11, 2000 to April 14, 2003, the burden shifts to DePuy to come forth with evidence sufficient to prove one of the statutory affirmative defenses outlined in the EPA. Pursuant to the fourth affirmative defense, DePuy asserts that the pay disparity between Ms. Dove and Mr.

---

[4] The relevant language of the EPA reads:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: *Provided*, That an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

29 U.S.C. § 206(d)(1)

7

Benzinger was based on some nondiscriminatory factor other than sex—Mr. Benzinger received higher pay because his performance as a manufacturing supervisor was superior to Ms. Dove's performance. DePuy attempts to prove this through the testimony of various DePuy employees, by highlighting the objective criteria used in the year-end performance review process, and by pointing out the numerous differences between the comments and overall numerical scores contained in the individual year-end performance reviews of Ms. Dove and Mr. Benzinger. Ms. Dove doesn't dispute the authenticity of the factual statements in the individual year-end performance reviews, but argues that the final numerical scores are the result of a subjective system—a system that, when applied, results in consistently lower scores (and thus lower pay) for her rather than Mr. Benzinger.

When an employer argues that the disparity in pay is based on a factor other than sex, the court must ask whether that factor "is bona fide, whether it has been discriminatorily applied, and in some circumstances, whether it may have a discriminatory effect." Dey v. Colt Constr. & Dev. Co., 28 F.3d at 1462; *see also* Fallon v. State of Illinois, 882 F.2d 1206, 1211 (7th Cir. 1989). While the record contains evidence that might show a bona fide performance review system based on nondiscriminatory factors other than sex, the evidence is not dispositive because DePuy does not adequately explain how the connection between the final numerical scores and Ms. Dove's compensation was administered in a nondiscriminatory manner. This explanation is especially crucial when Ms. Dove

was the only female manufacturing supervisor and there is evidence that DePuy employees held a subjectively negative opinion of Ms. Dove because of her gender.

Based on the arguments before it and taking the record in a light most favorable to Ms. Dove, it cannot be said that no reasonable trier of fact could help but find that DePuy's merit system was applied in a nondiscriminatory manner or had no discriminatory effect on Ms. Dove. Summary judgment based on the EPA's fourth affirmative defense would be improper.

## TITLE VII – WAGE DISCRIMINATION

The court turns to Ms. Dove's Title VII wage discrimination claim, for "even if the plaintiff's Equal Pay Act and Title VII claims [are] identical, Title VII is an independent remedy, in that it may be pursued in conjunction with other remedies." Cullen v. Indiana Board of Trustees 338 F.3d at 703 (citation omitted). Additionally, "[i]t is possible that a plaintiff could fail to meet [her] burden of proving a Title VII violation, and at the same time the employer could fail to carry its burden of proving an affirmative defense under the Equal Pay Act." Fallon v. State of Illinois, 882 F.2d at 1217.

Ms. Dove may prove her discrimination claims through direct evidence demonstrating discriminatory intent by setting forth either an outright admission by the decision-maker that the challenged action was undertaken because of race, or "a 'convincing mosaic' of circumstantial evidence that points directly to a discriminatory reason for the employer's action." Sartor v. Spherion Corp., 388

9

F.3d 275, 278 (7th Cir. 2004) (quoting Rhodes v. Illinois Dep't of Transp., 359 F.3d 498, 504 (7th Cir. 2004)). Alternatively, Ms. Dove may establish a prima facie case by offering indirect evidence of discrimination under the burden-shifting analysis set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

To establish a prima facie case of sex discrimination under Title VII, Ms. Dove "must show that (1) she was a member of a protected class, (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action, and (4) the employer treated a similarly situated man more favorably." Cullen v. Indiana Board of Trustees 338 F.3d at 704. Unlike a claim under the EPA, a Title VII wage discrimination claim requires proof of "an *intent* to discriminate, and the intent must encompass an actual desire to *pay* women less than men because they are women." Loyd v. Phillips Bros. Inc., 25 F.3d 518, 525 (7th Cir. 1994) (emphasis in original).

If Ms. Dove establishes a prima facie case, the burden shifts to DePuy to set forth a legitimate, nondiscriminatory reason for action and "produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." Stockett v. Muncie Indiana Transit Sys., 221 F.3d 997, 1001 (7th Cir. 2000) (quoting Texas Dept. of Comm'y Affairs v. Burdine, 450 U.S. 248, 257 (1981)). If DePuy sets forth a legitimate, nondiscriminatory reason for its actions, "the inference of discrimination disappears and the plaintiff must prove, by a preponderance of the evidence, that the reasons proffered by the defendant were pretextual for

10

intentional discrimination." Robin v. Espo Eng'g Corp., 200 F.3d 1081, 1088 (7th Cir. 2000). "A pretext for discrimination . . . means something worse than a business error; pretext means deceit used to cover one's tracks." Grube v. Lau Indus., Inc., 257 F.3d 723, 730 (7th Cir. 2001). "While the *McDonnell Douglas* approach is often called a 'burden shifting' method of proof, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Stockett v. Muncie Transit, 221 F.3d at 1001.

Ms. Dove cannot succeed under the direct method of proof. Ms. Dove submits evidence of the resentment she felt from her fellow employees because of her gender, but the summary judgment record doesn't adequately connect these feelings to any decision-makers' decision to pay her differently. *See* Cerutti v. BASF Corp., 349 F.3d 1055, 1066 (7th Cir. 2003) (to prevail, plaintiff must "present evidence from which a reasonable jury could infer that [non-decision-maker's] prejudicial views influenced [decision-maker] to such a degree that it resulted in [the challenged actions]").

Nor has Ms. Dove presented sufficient proof of DePuy's intent to discriminate to create a convincing mosaic of intentional discrimination based on her gender. Ms. Dove argues that some male employees received overtime pay when she did not, but she doesn't disagree that she never submitted the necessary proof of overtime to DePuy for payment. Ms. Dove also claims she received less training than given to her male supervisors, that she was passed over

11

for a promotion, and that she was downgraded in her review based on an overtime mistake when a male colleague was not. Other than calling these alleged circumstances "questionable," Ms. Dove has not shown how a decision-maker at DePuy took these actions specifically because she was female, and so she has not put forth sufficient evidence that "point[s] directly to a discriminatory reason for the employer's action." Adams v. Wal-Mart Stores, Inc., 324 F.3d 935, 939 (7th Cir. 2003).

Furthermore, Ms. Dove cannot prevail on her Title VII wage discrimination claim under the indirect method of proof because she cannot prove that a similarly situated male was treated any differently than her.   To prevail under this method, Ms. Dove must show that while she did not receive a higher numerical score on her year-end review, a similarly situated male was treated more favorably. "To meet [her] burden of demonstrating that another employee is 'similarly situated,' a plaintiff must demonstrate that there is someone who is directly comparable to [her] in all material respects." Grayson v. O'Neill, 308 F.3d 808, 819 (7th Cir. 2002). She must identify an employee who is substantially similar with respect "to performance, qualifications, and conduct." Franklin v. City of Evanston, 384 F.3d 838, 847 (7th Cir. 2004); *see also* Radue v. Kimberly-Clark Corp., 219 F.3d 612, 617-618 (7th Cir. 2000) ("This normally entails a showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or

mitigating circumstances as would distinguish their conduct or the employer's treatment of them.").

Ms. Dove identifies only one other manufacturing supervisor who received a higher numerical score on his year-end review—Mr. Benzinger. While Ms. Dove presents evidence to show that she was substantially similar to Mr. Benzinger in terms of qualifications and job description, she hasn't presented sufficient evidence for a reasonable jury to conclude that she was substantially similar to Mr. Benzinger with respect to performance and conduct. Ms. Dove's and Mr. Benzinger's year-end reviews highlight the numerous factual differences between how each employee performed in nearly all five categories of conduct—factual differences that Ms. Dove does not dispute.

Even if Ms. Dove could make a *prima facie* case of wage discrimination, she could not prove that DePuy's proffered reason for paying her differently was pretextual. Because DePuy offers a legitimate nondiscriminatory reason for its action—that Mr. Benzinger had better year-end performance reviews than Ms. Dove—Ms. Dove must prove that this reason is merely a pretext to discriminate against her because she is female. Once again, Ms. Dove does not argue that the underlying facts used as the basis of the year-end review are false, but rather the final numerical numbers were unwarrantably lower than she deserved.

Ms. Dove's belief that the evaluations were unwarrantably low is not enough to prevent summary judgment. Haywood v. Lucent Techs., Inc., 323 F.3d 524, 531 (7th Cir. 2003). Under Title VII, Ms. Dove's subjective self-appraisal doesn't create

13

a genuine issue of fact regarding the honesty of the evaluations. *See* Gustovich v. AT & T Comm., Inc., 972 F.2d 845, 848 (7th Cir. 1992) ("employee's self-serving statements about [her] ability" are insufficient to contradict employer's negative evaluation, create a material dispute about employer's honesty, or establish pretext). Indeed, Ms. Dove's numerical scores were well within, if not above, the average year-end reviews when compared to her other male colleagues. Under Title VII, DePuy is entitled to review her performance as a whole, both positive and negative, and determine what overall score to assign her. *See* Fortier v. Ameritech Mobile Comm., Inc., 161 F.3d 1106, 1114 (7th Cir. 1998) (an employer is "entitled to determine that the deficiencies in [her] performance outweighed [the] accomplishments."). Ms. Dove has not adequately shown that DePuy's year-end reviews, and so the nondiscriminatory basis of the compensation disparity, are merely a pretext to discriminate against her because of her gender.

CONCLUSION

For the reasons set forth above, the court GRANTS DePuy's motion to file an oversize brief [Doc. No. 35], GRANTS IN PART AND DENIES IN PART DePuy's motion for summary judgment [Doc. No. 34], and because the challenged portions of Mr. Campbell's affidavit were immaterial to the outcome of this motion, DENIES DePuy's motion to strike [Doc. No. 39] as moot.

SO ORDERED.

ENTERED: July 18, 2005

                         /s/ Robert L. Miller, Jr.
                         Chief Judge
                         United States District Court